IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| OLGA M. ORTIZ COSME,<br><br>    Plaintiff,<br><br>        v.<br><br>LUIS A. RODRÍGUEZ,<br>HS GENERAL CONTRACTORS, INC.;<br><br>    Defendants. | CIVIL NO.: 08-2153 (MEL) |

**OPINION AND ORDER**

**I.    PROCEDURAL HISTORY**

On June 23, 2010, a jury returned a verdict in favor of plaintiff Olga M. Ortiz Cosme and against defendants Luis A. Rodríguez ("Rodríguez") and HS General Contractors, Inc. ("HS") as to plaintiff's claims for sexual harassment and retaliation under Title 42 United States Code, section 2000e-5 *et seq.*, Puerto Rico Act Number 17 of April 22, 1988, P.R. Laws Ann., tit. 29, § 155 ("Law 17"), Puerto Rico Act Number 69 of July 6, 1985, P.R. Laws Ann., tit. 29, § 1321 ("Law 69"), and Puerto Rico Act Number 100 of June 30, 1959, as amended, P.R. Laws Ann., tit. 29, § 146 ("Law 100"). (Docket Nos. 66, 68.) Pending before the court is defendants' motion pursuant to Federal Rule of Civil Procedure 50 for the entry of judgment notwithstanding the verdict, contending that based upon the evidence presented at trial, no reasonable jury could have found that defendants sexually harassed plaintiff, and plaintiff's response in opposition. (Docket Nos. 63, 65.)

1

## II.     LEGAL ANALYSIS

### A. Federal Rule of Civil Procedure 50 Standard

Federal Rule of Civil Procedure 50 provides, in pertinent part:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed R. Civ. P. 50(a).  Review of a Rule 50 motion is strongly weighted toward preservation of the jury verdict, and the "court is without authority to set aside a jury verdict and direct entry of a contrary verdict unless the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Keisling v. SER-Jobs for Progress, 19 F.3d 755, 759-60 (1st Cir. 1994); see N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 26 (1st Cir. 2005).  "When ruling upon a motion for judgment notwithstanding the verdict, the trial judge may not evaluate the credibility of the witnesses, the weight of the evidence, or attempt to resolve conflicting testimony, because credibility questions are within the exclusive province of the jury.  The judge must view the evidence in the light most favorable to the non-movant and grant that party every reasonable inference that the jury might have found in its favor." Acevedo García v. Vera Monroig, 213 F. Supp. 2d 42, 47 (D.P.R. 2002) (citations omitted).

### B. Sexual Harassment under Puerto Rico and Federal Law

In order to prove a hostile work environment claim based on sexual harassment under Federal and Puerto Rico law, "the plaintiff must demonstrate that the complained-of conduct was 'sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create

2

an abusive work environment.'" Rosario v. Dep't of Army, 607 F.3d 241, 246 (1st Cir. 2010) (quoting Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 473 (1st Cir. 2010)); see García v. V. Suárez & Co., 288 F. Supp. 2d 148, 161 (D.P.R. 2003) (noting that Puerto Rico law "conforms to the Title VII requirements for sexual harassment and hostile work environments."). "That environment 'must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Rosario, 607 F.3d at 246 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)). "'There is no mathematically precise test to determine whether a plaintiff has presented sufficient evidence' that she was subjected to a severely or pervasively hostile work environment." Pomáles v. Celulares Telefónica, 447 F.3d 79, 83 (1st Cir. 2006) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003)).

"We examine all the attendant circumstances including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." Rosario, 607 F.3d at 246 (citing Pomáles, 447 F.3d at 83; Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "'Subject to some policing at the outer bounds, it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment.'" Rosario, 607 F.3d at 246 (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 18 (1st Cir. 2002)).  Although "[t]he workplace is not a cacoon, and those who labor in it are expected to have reasonably thick skins," Marrero, 304 F.3d at 19, "[t]he accumulated effect of incidents of humiliating, offensive comments directed at women . . . taken together, can constitute a hostile work environment." O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001) (citing Williams v. Gen. Motors Corp., 187 F.3d 553, 563-64 (6th Cir. 1999)).

3

Moreover, "[t]he harassing conduct need not be overtly sexual in nature. 'Where a plaintiff endures harassing conduct, although not explicitly sexual in nature, which undermines her ability to succeed at her job, those acts should be considered along with overtly sexually abusive conduct in assessing a hostile work environment claim.'" Rosario, 607 F.3d at 247 (quoting O'Rourke, 235 F.3d at 729).

### C. Plaintiff's sexual harassment claim in light of the evidence presented at trial most favorable to her

Plaintiff, who knows HS President Ramón Figueroa ("Figueroa") from studying at the same high school, was hired to work in HS as an accounting clerk from August 31, 2007 to November 26, 2007. Rodríguez was not plaintiff's direct supervisor. There was evidence at trial, however, that Rodríguez and Figueroa were friends since childhood, that Rodríguez had worked at HS since the company was created, that Rodríguez played a prominent role as HS's General Foreman of the Electric and Plumbing Division, that Rodríguez had an office in the same premises where plaintiff worked during her brief tenure at HS, and that Rodríguez (who spent a significant amount of time in the field) would work at the office at least three or four times per week, although not necessarily each time for the entirety of the day. Moreover, plaintiff testified that HS Comptroller José Caraballo ("Caraballo"), her immediate supervisor, told her on November 26, 2007 that her employment was being terminated because Rodríguez had told him to fire her. At the time of the events in controversy, HS – which had somewhere between 90 and 100 employees – did not have a human resources department and an employee manual with specific procedures on how sexual harassment claims would be handled by the company.[1]

---

[1] Plaintiff's job application for HS, however, contains the following two questions: "(a) Have you been accused of discrimination, including sexual harassment? (b) Have you been a victim harassment and/or sexual harassment, labor?" Figueroa testified that the reason for having those questions in the application is that he does not want people in his company who have had to deal with those experiences in the past.

During the approximately three months of plaintiff's employment at HS, Rodríguez frequently yelled and cursed at her. He called her "mama" (translated at trial as "honey") and "aparata" (translated at trial as "apparatus") on numerous occasions and refused to call her by her name. When plaintiff, who had to follow certain instructions over payroll from Caraballo, refused to authorize certain payment requested by Rodríguez, he asked "who the fuck" she thought she was. On other occasions, Rodríguez stated in plaintiff's presence that he had "fucked himself," since he had to consult her for everything, and that he was "fucked" because she got a computer and a desk just after beginning work. According to plaintiff's testimony, Rodríguez questioned almost everything she did, on a daily basis, from her second day of work until the day she was fired.

On one occasion, plaintiff, who had completed course work in engineering, was dictating from a blueprint over the phone to a coworker in the field. When Rodríguez saw plaintiff with the blueprint, he asked "what the fuck" she was doing with the blueprint, since "women are good for nothing," reducing plaintiff to tears. Another time, he told plaintiff that he would send her to the field, where she would not be able to handle the pressure because she is a woman. Rodríguez told plaintiff that women are dumb and only good for kitchen chores and sex. Once, Rodríguez told her that he always wanted a woman with whom he could have sex "like a rabbit," very fast. Rodríguez also told plaintiff that her legs were like housing column posts and commented that if Rosa Álvarez, a co-worker, fell forward, nothing would happen to her.

According to plaintiff, on two or three occasions she informed Figueroa about Rodríguez's treatment of her, and although Figueroa assured plaintiff that he would deal with Rodríguez, the situation only deteriorated. She also stated that she informed Caraballo about all of the events and Caraballo did nothing to remedy the problem. Once, according to plaintiff, she met with Figueroa

5

and Rodríguez together, but they did not discuss the harassment plaintiff had complained about. Plaintiff testified that Rodríguez's harassment made her feel humiliated and anxious. After she was fired, plaintiff was unable to finish her engineering studies, had to depend on welfare benefits, and sought medical attention with a psychiatrist two or three times.

While some of plaintiff's testimony was contradicted by testimony presented by defendants, when viewed in the light most favorable to plaintiff, the evidence presented at trial was sufficient for the jury to find that Rodríguez's conduct was severe and pervasive enough to create a hostile work environment, going beyond "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher, 524 U.S. at 788; see Rosario, 607, F.3d at 248-49. Plaintiff's testimony permits the conclusion that Rodríguez frequently denigrated women in plaintiff's presence and made disparaging comments about plaintiff's ability in the workplace because she is a woman. Some of Rodríguez's remarks were clearly sexual in nature, such as his comment to plaintiff about having sex like a rabbit. Moreover, while not all of Rodríguez's comments were directly related to sex, for example his expressed outrage at plaintiff's refusal to honor his request for a payment, his voiced frustration with having to consult plaintiff at work, and his proclaimed dissatisfaction with the provision of plaintiff's workspace, such comments may nonetheless contribute to a hostile work environment claim. See Rosario, 607, F.3d at 248-49; O'Rourke, 235 F.3d at 730. Taken in the aggregate, plaintiff's evidence of sex-based harassment was sufficient to permit a reasonable jury to return a verdict in her favor. See Rosario, 607, F.3d at 248-49; Marrero, 304 F.3d at 19.

### III. CONCLUSION

For the reasons stated above, defendants' motion for judgment notwithstanding the verdict

(Docket Nos. 65, 66) is DENIED.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 26th day of July, 2010.

s/ Marcos E. López  
U.S. MAGISTRATE JUDGE
